IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> v. <br><br> DAVID REIP, DENNIS NOSTRANT, GERARD ROBERTSON, and MARCUS LABAT <br><br> Defendants. | CASE NO: 1:25-cr-00062 |

**DEFENDANTS REIP, NOSTRANT, ROBERTSON, AND LABAT'S
JOINT MOTION AND BRIEF IN SUPPORT OF MODYFYING
<u>CONDITIONS OF THEIR BAIL RELEASE ORDERS</u>**

COME NOW David Reip, Dennis Nostrant, Gerard Robertson, and Marcus Labat (hereinafter "Practicing Defendants"), defendants in the above styled action, by and through their undersigned counsel, and file this Motion and Brief in Support of Modifying Conditions of Their Bail Release Orders and the Order issued by this Court concerning their ability to attend church and associate with other members of their Church, the House of Prayer Christian Church. (Docs. 15, 17, 19, 21, and 98). In support of this request, the above listed Practicing Defendants submit the following:

**INTRODUCTION**

Among the Practicing Defendants, Mr. Reip, Mr. Robertson, and Mr. Nostrant are alleged to have committed Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1344(2) and 1349, and Messrs. Nostrant, and Reip are each charged with two counts of Bank Fraud in violation of 18 U.S.C. §§ 1344(2) and 2, with many of the alleged victims and potential government witnesses being members of their church, the House of Prayer Christian Church ("HOPCC"), and HOPCC's tightly knit community. (Doc. 3 – "the Indictment").

Also, among the Practicing Defendants, Messrs. Robertson and Labat are alleged to have committed Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343 and 1349, targeting veterans' benefits related to the House of Prayer Bible Seminaries ("HOPBS").

Furthermore, Mr. Labat was alleged to have committed 16 counts of Wire Fraud in violation of 18 U.S.C. §§ 1323 and 2, related to the HOPBS receipt of federal funds.

The House of Prayer Christian Church has been operating, with its largest church and congregation in Hinesville, Georgia, with locations in other states, following a schism with the New Testament Christian Church, since 2004. (Doc. 3 at ¶¶ 12-13). Pastor Rony Denis has been the spiritual leader of this group since well before the schism, with relationships with many of the congregation going back 20 years or longer. *Id.* Rony Denis has also been charged in this Indictment, and he along with Anthony Oloans, another Defendant, are currently being held in detention pending trial. (Docs.71 and 70).

On September 10, 2025, the Indictment in this case was unsealed, and the defendants were all taken into custody by federal agents. The indictment and arrests were publicized by the Government through a Press Release[1] and press conference[2] on that same day.

Following the arrests on September 10th, the Practicing Defendants were brought before Magistrate Judge Epps in Augusta, Georgia on September 11th, and at their initial appearance that day, were each granted Conditional Release with the same terms. (Docs. 15, 17, 19, and 21 (the "Release Orders"). Included in each of those Release Orders is condition 7(g) which states "The defendant must: … avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Co-Defendants, unless arranged by and in the presence of counsel." *Id*. at ¶7.

Each of the Practicing Defendants is a devout and longtime member of the HOPCC, and their faith tradition is guided by literal readings of scripture, and in particular their interpretation of the Biblical injunction from the Epistle Paul to the Romans, "be not conformed to this world" Romans 12:2. They exercise this faith tradition in part by living in communion with one another

---

[1] *Eight Members of the House of Prayer Christian Churches Indicted for Fraud Schemes in Operation "False Profit"*, USAO, published on September 10, 2025, last accessed at https: //www.justice.gov/usao-sdga/pr/eight-members-house-prayer-christian-churches-indicted-fraud-schemes-operation-false on October 10, 2025; attached as Exhibit A, hereinafter "the Press Release".
[2] https: //www.wrdw.com/2025/09/11/stolen-name-stolen-benefits-details-alleged-cult-fbi-raid-mansion/ ; last accessed on October 18, 2025.

in a lifestyle explicitly modeled on that of the early Christians as described in the book of Acts and the Epistles of Paul.

Their faith tradition also highly emphasizes the importance of the scriptural exhortation that adherents should "not forsak[e] the assembling of ourselves together" (Hebrews 10:25), which follows from an Old Testament tradition of the Twelve Tribes gathering together for worship, *see* 2 Kings 23:1-3, and St. Paul's admonition that the church is "the body of Christ," 1 Corinthians 12:27. *See Capitol Hill Baptist Church v. Bowser,* 496 F.Supp.3d 284 at 293-294 (District Court, D.C.) (2020) *and Wisconsin v. Yoder,* 406 U.S. 205 at 216 (1972).

None of the Practicing Defendants have any criminal record and none have ever been placed on any type of supervision by any court. The Practicing Defendants, understandably cautious with respect to the conditions of their bond, each requested the Court at their various arraignments, once they had the benefit of counsel, to clarify whether or not they were allowed to attend religious worship services at their respective usual places of worship (these defendants did not all attend the same branch of HOPCC). The Court subsequently requested that the Government and the Practicing Defendants meet and confer to attempt to arrive at a mutually agreeable solution.

The Government and the Practicing Defendants attempted to discuss the situation, with various accommodations proposed by the Defendants to allow them to attend church and to satisfy the acknowledged compelling interest of the Government in the orderly administration of justice. These negotiations failed, and a hearing was held on the matter on October 15, 2025, following which the Court issued an Order modifying the bond conditions for all released defendants "by prohibiting their attendance at, or participation in, any activities, services, gatherings, or events associated with the House of Prayer Christian Churches." (Doc. 98 at 1). Importantly, it appeared at the hearing that the government was agreeable to allowing the Practicing Defendants to attend services.

The Court did this for the stated purpose of "ensuring adequate protection of potential witnesses and the orderly and fair administration of justice." *Id.* The Practicing Defendants sought clarification as to who the Government considered to be potential witnesses and victims in this case to try and narrow down potential witnesses and victims from the *entire* past, current, and future congregation pursuant to the Practicing Defendants' right to clarity in the conditions imposed on their release pursuant to 18 U.S.C. § 3142(h)(1). The Court then provided that clarity

by stating that "[t]o comply with the standard bond condition prohibiting defendants from communicating with potential witnesses, Defendants shall consider any current or former member of the church as a potential witness, with the exception that a defendant may communicate with his immediate family members." *Id* at 1-2.

The Practicing Defendants understand that ensuring the adequate protection of potential witnesses and the orderly and fair administration of justice are compelling government interests, and that it is the routine practice of the Government to request, and the Court to grant, conditions either exactly like or extremely similar to those imposed in ¶7(g) of the bond release Orders for each defendant in this case. This is done in nearly every criminal case that is before the Court and is not a condition frequently objected to by criminal defendants for numerous reasons.

Notwithstanding this, the Court may impose the "least restrictive condition(s) *only as necessary* to reasonably assure the appearance of the person as required and the safety of any other person and the community." (emphasis added) 18 U.S.C. §3142(c)(1)(B).

Furthermore, the Practicing Defendants have a right to exercise their sincerely held religious beliefs as Christians by attending regular worship services in person pursuant to the First Amendment of the Constitution of the United States and the Religious Freedom Restoration Act ("RFRA") as modified by the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 40 U.S.C §§ 2000bb-1 et seq., 2000cc-5(7).

The Practicing Defendants understand and acknowledge that they are not going to be allowed to obstruct justice or interfere with this case in any way, and that no right to religious exercise would entitle them to do so. They also have been advised by their respective counsel that the simplest way to ensure compliance with the law is to refrain from attending these church services, and for most defendants, that would be the end of the matter as far as the Court is concerned. However, the Practicing Defendants sincerely believe that regular church attendance at a House of Prayer affiliated church is necessary for the salvation of nothing less than their eternal souls. This is not a matter in which they can afford to be timid, and they therefore must press the Court and assert their rights, as nothing less will do with stakes so high.

# ARGUMENT AND CITATION TO AUTHORITY

The Religious Freedom Restoration Act (40 U.S.C. 2000bb-1 et seq., "RFRA") was enacted by Congress in 1993 "in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 at 693 (2014). It was enacted in response to the Supreme Court's decision in *Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872 (1990) by Congress in an attempt to restore what Congress felt was the proper respect for the freedom to exercise one's religion in America. Through this act, Congress explicitly attempted to adopt by statute the balancing test that existed prior to *Smith*, as delineated in prior Supreme Court precedent under *Sherbert v. Verner,* 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 US. 205 (1972). *Hobby Lobby* at 693-695.

Following the passage of RFRA, the Supreme Court limited the scope of RFRA in *City of Boerne v. Flores*, 521 U.S. 507 (1997). *Id.* Congress, *again* responded by passing legislation, this time the Religious Land Use and Institutionalized Persons Act (40 U.S.C. §§ 2000cc-1 et seq., "RLUIPA"), by which Congress attempted to again accomplish what it set out to achieve by applying RFRA to the states as well as the federal government , Notably, Congress also expanded the definition of the term "religious exercise" to match the new definition in RLUIPA: "the term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Hobby Lobby* at 694-696*,* 40 U.S.C. §§ 2000bb-2(4), and 2000cc-5(7)(A).

Starting with the text, RFRA states that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability…only if it demonstrates that application of the burden to the person – (1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 40 U.S.C. §2000bb-1(a) and (b).

"Congress enacted RFRA in order to provide *greater* protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs,* 574 U.S. 352 at 357 (2015) citing *Hobby Lobby* at 694, 695.

RFRA has been repeatedly applied in criminal cases, both as a defense to an alleged violation of a criminal statute as well as in the context of conditions of release. *See Gonzales v. O Centro Espirata Beneficente Uniao do Vegetal,* 546 U.S. 418 (2006) (upholding injunction

preventing the Government from applying law against possession of hoasca, a hallucinogen regulated under schedule I of the Controlled Substances Act (21 U.S.C. § 812(c)), *US v. Grady,* 18 F.4th 1275 (2021) (upholding conviction of religious protestors for destruction of government property at King's Bay Naval base regarding nuclear weapons, deploying a RFRA analysis and finding that the defendants made their prima facie case, but that the government was able to show that no reasonable accommodation was requested nor could one have accommodated the religious exercise of the protestors in a less restrictive manner without compromising compelling governmental interests of the 'highest order' – the security of the nation's nuclear weapons); *US v. Marks,* 947 F. Supp. 858 (District Court, E.D. Pennsylvania 1996) (conducting RFRA analysis before denying defendant's request, after defendant entered his guilty plea, for release pursuant to 18 U.S.C. § 3143 so that he could perform various religious practices related to a "black feast" for his deceased mother as part of traditional Romani-American religious customs – the Court found the defendant made his prima facie case, but given the particular facts around that defendant and his request, found that no reasonable accommodation could accomplish the government's compelling interests); and *US v. Lafley,* 656 F.3d 936 (9th Cir. 2011) (applying RFRA analysis as to whether a convicted methamphetamine dealer who had converted to Rastafarianism could smoke marijuana as part of his religious practice while on supervised release, concluding that, despite clearly being high on marijuana at the hearing, the defendant made out his prima facie case under RFRA, and distinguishing the case from *O Centro* by noting that, unlike the controlled substances act, 18 U.S.C. § 3583 (like §3142) provides no exceptions to its blanket mandate that "the law prohibits *all* defendants on supervised release from using controlled substances" and that "when that prohibition is applied to someone with a criminal history like Lafferty's, the government's interest is compelling." *Lafley* at 941.)

The Bail Reform Act as codified at 18 U.S.C. §§ 3141-3156 is the primary set of statutes governing pretrial conditions for persons accused of a federal crime by the Government. In particular, 18 U.S.C. § 3142 governs the release or detention of a defendant in a criminal case pending trial.

In this particular case, the Court has already found that the Practicing Defendants can be released prior to trial and that so long as they comply with the conditions stated in their Release Orders, the Court is reasonably assured that they will appear in person as required for trial and sentencing, and that they do not pose a danger to the safety of any other person or the community

when it ordered the Practicing Defendants to be released pending trial. *See* Release Orders, *generally*, and 18 U.S.C. § 3142(a)-(c).

Furthermore, conditions beyond the ones required to be imposed on *all* defendants released pending trial are not laws of general applicability but must be individualized specifically to the individual and exact nature of the allegations against that defendant. 18 U.S.C. 3142(c)(1)(B).

The conditions imposed in the Release Orders and in the Courts Order modifying the conditions of release for all Practicing Defendants are subject to RFRA as they constitute a substantial burden on the exercise of the Practicing Defendants' sincerely held religious beliefs by prohibiting them from attending services and other events at the House of Prayer Christian Churches. *See* Release Orders and Modification Order. As those conditions constitute such a burden and are imposed by the Government, they must advance a compelling government interest and they must do so in the least restrictive manner possible. Once the defendants have established their prima facie case as described above, the burden then shifts to the Government to show why alternatives proposed by the defendants would not reasonably satisfy the admittedly compelling government interests in this case while allowing the Practicing Defendants to attend church. While the Practicing Defendants have offered up several proposals, the Government has declined to offer meaningful counter-proposals and has simply declared that it is not possible in this case, without spending the time required to ensure that there is not a way to accommodate the government's compelling interest in a manner less burdensome on the Practicing Defendant's exercise of their sincere religious faith.

The Release Orders for each of the Defendants in this case were written using a standard form, with a pre-printed title at the top of each page reading: "AO 199A (Rev. 06/19) Order Setting Conditions of Release". This form lists a series of conditions for the Court to select from to impose on the Defendants, beginning with pre-printed conditions listed in ¶¶1-5 which are mandatory under the Bail Reform Act for every defendant released prior to trial. Release Orders at ¶¶1-5, 18 U.S.C. §§ 3141 – 3156.

These mandatory conditions include requiring that the defendants not violate any federal, state, or local law while on release; that the defendants cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702; that the defendants must advise the court before changing residence or telephone number; that the defendants must appear in court as required

and, if convicted, must surrender to serve a sentence the court may impose; and that the defendants must sign an Appearance Bond, if ordered. Release Orders at ¶¶1-5.

Following those first five mandatory conditions, the form then states that "[p]ursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community." Release Orders at 2.

Following that statement, the form goes on to list a number of relatively standard conditions pre-filled in with checkboxes beside them to indicate that the Court has selected that condition and then blanks to fill in specifics related to the selected condition with room at the bottom of the form for the Court to add any additional conditions it wishes to impose. *See* Release Orders, *generally*. It is from this list of optional conditions that the Court selected what the form has labeled as ¶7(g) and added specific terms to the pre-printed terms as described above. *Id.*

Any doubt as to whether the Court was, through the Release Orders, prohibiting the Practicing Defendants from attending church services at a HOPCC Church in person was answered by the Court's modification of the conditions of release in its Order following the hearing on October 15, 2025. (Doc. 98, the "Modification Order"). They are forbidden. *Id.*

Without, at minimum, further fact-finding and analysis of the conditions, taking into consideration the exact nature of the crimes allegedly committed by each individual defendant, along with each individual defendant's history, ties to the community, religious convictions, or other factors necessary to make the particularized and individualized assessment required by RFRA, the blanket and non-individualized assessment of the Practicing Defendants relative risk of violating the mandatory condition placed on all people under release (and in fact, on all of us in general) against violating federal, state, or local laws. The Defendants would be doing so by attempting to coerce or intimidate a witness or victim in the case or seeking to obstruct justice in any other way. The Practicing Defendants are not seeking any exceptions from these requirements, but instead they are seeking only to practice their faith.

Unlike the criminal cases listed above, the Practicing Defendants are neither seeking an exception from a law of general applicability (or even one very close it like the Controlled Substances Act), nor have they been convicted of any crime. They are innocent until proven guilty, and any prohibition on the Practicing Defendants exercising their sincerely held religious

beliefs that is not limited in scope to the least restrictive means necessary to accomplish a compelling government interest with respect to each defendant, individually, those prohibitions must fall.

## CONCLUSION

The conditions as imposed on the defendants in this case violate their rights under the Religious Freedom Restoration Act as amended by the Religious Land Use and Institutionalized Persons Act as interpreted by the U.S. Supreme Court and more fully explained above.

Therefore, the conditions of the Practicing Defendants' Release must be modified to allow them to exercise their faith by attending church with reasonable restrictions that are narrowly and specifically tailored to each Practicing Defendant individually to accomplish the Government's compelling interests in the protection of witnesses and the orderly and fair administration of justice without unduly burdening those free exercise rights.

Respectfully submitted this 22nd day of October, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ Charles Hackney Rollins*
Robin E. Daitch
Georgia Bar No. 376288
Charles Hackney Rollins
Georgia Bar No. 367169
*Attorneys for Defendant Reip*

Hall Booth Smith, PC
1450 Green St.
Suite 145
Augusta, GA  30901
Telephone: 706-494-2694
crollins@hallboothsmith.com
rdaitch@hallboothsmith.com

Davis, Chapman, and Wilder, LLC
1143 Laney Walker Blvd, Suite 201
Augusta, GA 30901
706-200-1578
hchapman@dcwattorneys.com

*/s/ Holly G. Chapman*
Holly G. Chapman
Georgia Bar No. 512067
*Attorney for Defendant Nostrant*

HULL BARRETT, P.C.
801 Broad Street, 7th Floor
Augusta, GA 30901
(706) 722-4481 (Telephone)
(706) 722-9779 (Facsimile)
bhudson@hullbarrett.com

*/s/ Brooks K. Hudson*
BROOKS K. HUDSON
GA Bar No. SC 141621
*Attorney for Defendant Labat*

GILLEN LAKE & CLARK, LLC

*/s/ C. Troy Clark*

_____
C. Troy Clark
Georgia State Bar No.: 811674
*Attorney for Defendant Robertson*

GILLEN LAKE & CLARK, LLC
1450 Greene Street, Suite 3600
Augusta, Georgia 30901
T: (706) 631-4925
F: (404) 842-9750
E: tclark@glcfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    v.<br>DAVID REIP<br>    Defendant. | CASE NO: 1:25-cr-00062 |

### CERTIFICATE OF SERVICE

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing with this Court.

This 22nd day of October, 2025.

**HALL BOOTH SMITH, P.C.**

                                         */s/ Charles Hackney Rollins*
                                         CHARLES HACKNEY ROLLINS
                                         Georgia Bar No. 367169